IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| FLST, LTD, FLCT, LTD, AND FLSC, LTD, | § | |
|---|---|---|
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:16-CV-00017-KPJ |
| | § | |
| v. | § | |
| | § | |
| EXPLORER PIPELINE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER AND OPINION ON DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT ANDREW J. MCROBERTS

Pending before the Court is Defendant Explorer Pipeline Company's Motion to Exclude Plaintiff's Expert Andrew J. McRoberts ("Mr. McRoberts") (Dkt. 30). Plaintiffs FLST, Ltd; FLCT, Ltd; and FLSC, Ltd filed a Response (Dkt. 34). Defendant filed a Reply (Dkt. 35). The Court held a hearing on Defendant's motion on January 18, 2017 (Dkt. 37). After considering the arguments and evidence presented at the hearing, the motion, responses, and relevant filings, the Court finds Defendant's motion (Dkt. 30) is **GRANTED in PART and DENIED in PART.**

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of Plaintiffs' purchase and sale of a seventeen-acre tract of land in Flower Mound, Texas (the "Property") encumbered by a sixty-year-old interstate gas pipeline (the "Pipeline"). *See* Dkt. 30 at 1. In the late 1940s, the owners of the Property granted Sinclair Refining Company an easement to lay, maintain, and operate the Pipeline on the Property (the "Easement"). *Id.* Both ownership of the Property and rights under the Easement passed to other parties several times in the subsequent decades. *See* Dkt. 34 at 1. In 2001, an owner of the larger tract of land on which the Property was located, and the holders of the Easement, entered into an

agreement to amend the Easement that allegedly relocated the Easement to another portion of the then-owner's land (the "2001 Amendment"). *See id.* Plaintiffs purchased the Property in 2007, the same year Defendant acquired the Pipeline and the Easement from CITGO Products Pipeline Company. *See id.* at 2.

In or around 2014, Plaintiffs began negotiating with JGBL Chateau, LLC ("JBGL") to sell the Property. *See id.* Plaintiffs and JBGL agreed on a purchase price for the Property of approximately $16.4 million, which was approximately $7.25 per square foot. *See id.* In August 2014, the parties learned from the purchaser's engineers, who were performing development analyses, that a pipeline may be located on the Property. *See id.* Plaintiffs confirmed with Defendant that the Pipeline was located on the Property and demanded Defendant to remove the Pipeline. *See id.* Defendant refused; thus, Plaintiffs and JGBL adjusted the purchase price of the Property to account for its alleged diminished value. *See id.* As a result, Plaintiffs filed suit against Defendant seeking damages incurred as a result of the adjusted purchase price of the Property. *See id.* at 2-3.

Plaintiffs asserts damages against Defendant for permanent trespass. *See* Dkt. 26 at 3-4. In support of their claim against Defendant, Plaintiffs retained and designated Mr. McRoberts as one of their experts. *See* Dkt. 30-1 at 1. Mr. McRoberts opines that the decrease in the sales price of the Property was reasonable given the presence of the Pipeline and the potential damage it could cause, and he specifically states that his report "is not an appraisal and no opinion of market value of the [Property] is being provided." *See* Dkt. 30-2.

On December 2, 2016, Defendant filed a motion to strike Mr. McRoberts (Dkt. 30). Plaintiffs filed a response (Dkt. 34). Defendant filed a reply (Dkt. 35). The Court held a hearing on the motion on December 18, 2017 (Dkt. 37). At the hearing, Mr. McRoberts listed his

qualifications and experience. Further, he explained that he was hired to determine whether the price reduction was reasonable. He specifically stated at the hearing that although he is qualified and can perform an appraisal of the Property to determine its market value, he did not do so. He testified that although it was possible for him to perform a historical appraisal on the Property, he believed his analysis was a more accurate way to determine damages.

## LEGAL STANDARD

In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court instructed district courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. *See* 509 U.S. 579, 590-93 (1993). District courts must ensure that a proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." *See* FED. R. EVID. 702. Moreover, in order to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 594. The *Daubert* analysis applies to all species of expert testimony. *See United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003).

The expert testimony must be relevant, such that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue. *See Daubert*, 509 U.S. at 591-92. The expert testimony must also be reliable, meaning that the testimony is: (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) offered by a witness who has applied the principles and methods reliably to the facts of the case. *See* FED. R. EVID. 702.

Expert witnesses are not permitted to offer legal opinions under either Rule 702 or 704(a) of the Federal Rules of Evidence. *See Taylor Pipeline Constr., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 706 (E.D. Tex. 2006) (citing FED. R. EVID. 702, 704(a); *C.P. Interests, Inc. v. Cali. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001); *Owen v. Kerr-McGee Corp.*, 698

F.2d 236, 240 (5th Cir. 1983)). It is the obligation of the court and the court alone to construe the documents and their legal effect. *See First Fed. Sav. & Loan Ass'n of Alexandria v. Botello*, 725 F.2d 350, 354 n.3 (5th Cir. 1984).

The *Daubert* framework is a flexible one. *See Daubert*, 509 U.S. at 594. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *See St. Martin v. Mobil Exploration & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000).

## ANALYSIS

Defendant argues the Court should exclude Mr. McRoberts' testimony on four (4) grounds: (1) his report and testimony are irrelevant to any issue before the Court; (2) his report is not reliable; (3) he makes a legal opinion about the effect of the 2001 Amendment, which is outside the scope of his expertise and not the proper subject of expert testimony; and (4) his opinions based on the purported inspection of the Property on September 13, 2016, are irrelevant to the issue of Plaintiff's damages.

   **1. Relevancy**

Defendant's main argument, and the primary discussion at the hearing, is that Mr. McRoberts' testimony is not relevant and would not assist the trier of fact to understand or determine a fact in issue. *See* Dkt. 30 at 4. Plaintiffs designated Mr. McRoberts to testify as to Plaintiffs' damages. *See* Dkt. 30-1 at 1. Specifically, Plaintiffs designated Mr. McRoberts to opine on the reasonableness of the price reduction in the sales price after the parties discovered the Pipeline's presence on the Property. *See* Dkt. 30-2 at 1. Mr. McRoberts states in his report that he did not do an appraisal and was giving no opinion of the market value of the Property. *See id.* Further, at the hearing, Mr. McRoberts testified that although he is qualified and could

have performed an appraisal on the Property to determine its market value, he did not do so, as he was directed only to determine whether the price reduction in the sales agreement was reasonable.

Plaintiffs' cause of action is for permanent trespass under Texas law. *See* Dkt. 26 at 3-4. Texas law is very clear that the proper measure of damages for permanent trespass is the difference in the market value of the land immediately before and immediately after the trespass. *See Stevenson v. E.I. DuPont De Nemours & Co.*, 327 F.3d 400, 409 (5th Cir. 2003) (citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). Because Mr. McRoberts expressly states that his report is "not an appraisal and no opinion of market value" of the Property, and he testified that he did not perform the calculation articulated by the Texas Supreme Court, his report is not relevant to the calculation of damages.

Plaintiffs argue that the correct measure of damages is the diminution in value of the Property because of the trespass. *See* Dkt. 34 at 6 (citing *Porras*, 675 S.W.2d at 504, *abrogated in part on other grounds by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474 (Tex. 2014)). The Court disagrees. Despite Plaintiffs' argument, in *Porras*, the Texas Supreme Court was clear when it stated that the correct measure of damages for permanent damage to land is the difference in market value immediately before and immediately after the trespass. *See Porras*, 675 S.W.2d at 504. Further, in *Gilbert Wheeler*, the Texas Supreme Court explained that a landowner *may* recover for the intrinsic value of *trees* on his property, so long as the diminution in the fair market value of the land is essentially nominal. *See* 449 S.W.3d at 485 (emphasis added). The Texas Supreme Court expressly overruled opinions that held otherwise. *See id.* Thus, Plaintiffs' argument is meritless.

5

Plaintiffs further argue the Court should follow a "more flexible" approach in determining damages. *See* Dkt. 34 at 6. Specifically, Plaintiffs argue that the Texas Supreme Court has allowed a more flexible analysis of damages when a plaintiff's damages result not from a single event, but from an ongoing condition. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 2016 WL 3483165, at *21 (Tex. June 24, 2016). However, the cases the Texas Supreme Court refers to concern alleged damage caused by a public or private nuisance. *See Crosstex*, 2016 WL 3483165 (permanent damage caused by continuous loud noise and vibrations); *Robinson Mach. Co. v. Davis*, 689 S.W.2d 286 (Tex. App.—Waco 1985, writ ref'd n.r.e.) (damage to a tractor due to metal chips in engine from defective repair); *Sherman Gas & Elec. Co. v. Belden*, 123 S.W. 119 (Tex. 1909) (machinery from plant caused walls of plaintiffs' home to shake and vibrate); *Burns v. Lamb*, 312 S.W.2d 730 (Tex. Civ. App.—Fort Worth 1958, writ ref'd n.r.e.) (alleged damage caused by salt water escaping from oil lease adjacent to plaintiff's tract of land). Further, the Texas Supreme Court held the proper measure of damages in these instances is the market value with and without the nuisance. *See Crosstex*, 2016 WL 3483165, at *21. Thus, Plaintiffs' argument that the Court should follow a "more flexible" approach in determining damages is misguided.

Plaintiffs finally argue Mr. McRoberts will also testify as to the reasonableness of the decreased price, which is relevant to show that Plaintiffs did not fail to mitigate their damages. *See* Dkt. 34 at 9. Defendant asserted that Plaintiffs failed to take reasonable steps and make reasonable efforts to mitigate their damages, if any. *See* Dkt. 28 at 4. Thus, the Court finds Mr. McRoberts' report and opinions are relevant as to whether Plaintiffs failed to mitigate their damages.

Although Mr. McRoberts testified that the more accurate approach for analyzing damages is to determine whether the diminution of the sales price between parties in an arms-length transaction was reasonable, this is not the standard created by Texas law. Again, Texas courts are clear that the proper determination for damages in a permanent trespass case is to analyze the difference in market value in the property immediately before and after the injury. *See Stevenson*, 327 F.3d at 409 (citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)). Therefore, the Court finds Mr. McRoberts' report and opinions are not relevant as to the determination of damages. However, the Court finds Mr. McRoberts' report and opinions are relevant in the determination of whether Plaintiffs mitigated their damages.

2. **Reliability**

Defendant argues Mr. McRoberts fails to meet the threshold level of reliability required under *Daubert*. *See* Dkt. 30 at 6. Specifically, Defendant states Mr. McRoberts relies on case studies performed by his firm, which were not provided to Defendant; therefore, Defendant concludes Mr. McRoberts' opinions and reports should be excluded because they are not based on sufficient facts or data, not the product of reliable principles and methods, and he has not applied his principles and methods to the facts of the case. *See id.* at 6-7. The Court questioned the parties as to whether Plaintiffs have turned over the case studies to Defendant at the hearing. Plaintiffs agreed to provide the case studies to Defendant; thus, the Court finds this issue is moot.

3. **Legal Opinion of the 2001 Amendment**

Defendant argues Mr. McRoberts improperly makes an opinion about the legal effect of the 2001 Amendment because it is outside the scope of his expertise and not the subject of expert testimony. *See id.* at 8. The Court finds Mr. McRoberts may not testify as to the legal effect of the 2001 Amendment, but as his testimony requires, he may make assumptions about the 2001

7

Amendment in order to support his ultimate opinion as to whether Plaintiffs failed to mitigate their damages.

### 4. Inspection of the Property on September 13, 2016

Finally, Defendant argues Mr. McRoberts' opinions based on a purported inspection of the Property on September 13, 2016, are irrelevant. *See id.* at 9. Mr. McRoberts uses the purported inspection of the Property to support his opinions in his report. *See id.* Because the Court is allowing Mr. McRoberts' report for the issue of mitigation of damages, the Court finds Mr. McRoberts may use this opinion in support of his report. Thus, his opinions based on the purported inspection of the Property on September 13, 2016, may be used to support his opinions as to whether Plaintiffs mitigated their damages.

## CONCLUSION

For the foregoing reasons, the Court finds Defendant's motion (Dkt. 30) is **GRANTED in PART and DENIED in PART**. The Court finds Defendant's motion to exclude Mr. McRoberts' report and opinions as to measuring damages is **GRANTED**. However, the Court finds Mr. McRoberts' report and opinions are allowed as to determine whether Plaintiffs mitigated their damages.

Further, the Court finds Defendant's motion to exclude Mr. McRoberts' report and opinions based on reliability is **DENIED**. Plaintiffs are **ORDERED** to produce the case studies Mr. McRoberts' relied upon in making his report to Defendant within *five (5) business days* of the entering of this order.

Further, the Court finds Defendant's motion to exclude Mr. McRoberts' opinion as to the 2001 Amendment is **DENIED**. Mr. McRoberts is directed to only make assumptions about the

2001 Amendment in order to support his ultimate opinion as to whether Plaintiffs failed to mitigate their damages.

Further, the Court finds Defendant's motion to exclude Mr. McRoberts' purported inspection of the Property is **DENIED**. Mr. McRoberts' report and opinions on the inspection of the Property may be used in order to support his opinions as to whether Plaintiffs mitigated their damages.

Finally, Plaintiffs moved at the hearing for leave to amend Mr. McRoberts' expert report. Plaintiffs shall file a motion for leave to amend Mr. McRoberts' expert report within *seven (7) days* of the entering of this Order, if they wish to do so.

**IT IS SO ORDERED.**

**SIGNED this 25th day of January, 2017.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE