IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| FLST, LTD, FLCT, LTD, AND FLSC, LTD, | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:16-CV-00017-KPJ |
| | § | |
| v. | § | |
| | § | |
| EXPLORER PIPELINE COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ORDER AND OPINION

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. 49). Plaintiffs filed a Response (Dkt. 54). Defendant filed a Reply (Dkt. 59), and Plaintiffs filed a Sur-Reply (Dkt. 60). The Court held a hearing on the matter on April 20, 2017, and the Court allowed the parties to file supplemental briefing regarding the application of the discovery rule under Texas law in this case (Dkt. 62). Both parties filed supplemental briefs (Dkts. 66, 67). For the following reasons, the Court finds Defendant's motion (Dkt. 49) is **DENIED**.

### I. BACKGROUND

This matter involves a claim for trespass and concerns the existence and placement of a pipeline and easement on a seventeen (17) acre tract of land in Denton County, Texas (the "Property"). *See* Dkt. 48 at 6. In 1948, the then-owners of the Property granted an easement (the "Easement") to Sinclair Refining Company to install and operate a petroleum products pipeline (the "Pipeline") on the Property, which was then a part of a larger tract of land. *See id.* at 7. Both ownership of the Property and rights under the Pipeline and the Easement passed to other parties several times in the subsequent decades. *See id.*

1

In 2001, the owners of the larger tract of land on which the Property was located, D-F Funds GP, LLC ("D-F Funds"), and the holders of the Easement at that time, Citgo Products Pipeline Company ("Citgo"), entered into an amendment to the Easement that allegedly relocated the Easement off the Property to another portion of the then-owner's land (the "Amendment") (Dkt. 48-7 at 11-13). Based on a review of the survey by Plaintiffs and of title documents by their real estate professionals, Plaintiffs purchased the Property in 2007 with the understanding that several easements previously located on the Property had been abandoned or moved, including the Easement. *See* Dkt. 48-1 at 1-2. Defendant purchased the Pipeline and the rights of the Easement in late 2007, after Plaintiffs purchased the Property. *See* Dkt. 48-7 at 8.

In or around 2014, Plaintiffs began negotiating to sell the Property, along with other adjacent tracts of land as part of the same purchase, to JBGL Chateau, LLC ("JBGL"). *See* Dkt. 48-1 at 2. The parties to the transaction learned from JBGL's engineers that a pipeline might be located on the Property, and it was later confirmed. *See id.* Plaintiffs demanded that Defendant remove the Pipeline, but Defendant refused to do so. *See id.* Plaintiffs and JBGL adjusted the purchase price of the Property and amended their sales contract to reflect a sales price reduced by approximately $805,000.00. *See id.* On December 1, 2015, Plaintiffs closed on the sale of the Property. *See id.* at 3. On November 25, 2015, Plaintiffs filed suit against Defendant for damages resulting from the reduction in purchase price. *See* Dkt. 5. Defendant removed the case to federal court based on diversity jurisdiction. *See* Dkt. 1.

On February 1, 2017, Plaintiffs filed a motion requesting the Court to designate a date for Plaintiffs' damages analysis. *See* Dkt. 39 at 4-6. On February 14, 2017, the Court ordered the parties to confer on the issue of the Court designating a date for the damages analysis. *See* Dkt. 44 at 2. If the parties could not agree to a date, the parties were ordered to file a motion for

summary judgment limited to the issue of the damages analysis. *See id.* On February 22, 2017, Plaintiffs filed a motion for partial summary judgment (Dkt. 48). On February 27, 2017, Defendant filed a response (Dkt. 52). On March 1, 2017, Plaintiffs filed a reply (Dkt. 53). The Court entered an order on March 13, 2017, finding the appropriate date for the damages analysis to be February 5, 2001. *See* Dkt. 57.

On February 22, 2017, Defendant filed a Motion for Summary Judgment (Dkt. 49), claiming that Plaintiffs' trespass claim is barred by the statute of limitations. On March 8, 2017, Plaintiffs filed a Response (Dkt. 54). On March 15, 2017, Defendant filed a Reply (Dkt. 59). On March 21, 2017, Plaintiffs filed a Sur-Reply (Dkt. 60). On April 27, 2017, following a hearing on the matter, the parties submitted supplemental briefing regarding the application of the discovery rule under Texas law (Dkts. 66, 67).

## II. <u>LEGAL STANDARD</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there be no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" if a dispute

3

over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. *See id.* at 248. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

### III. EVIDENCE PRESENTED

Defendant has offered the following summary judgment evidence in support of its motion:

1. Sworn Deposition of Stephen Williams, Plaintiff's corporate representative (Dkt. 49-1);

2. Sworn Deposition of Sean Shropshire, who conducted and authored 2007 surveys of the Property (Dkt. 49-2);

3. Sworn Deposition of William Anderson, civil engineer engaged by Plaintiffs to develop the Property (Dkt. 49-3);

4. Sworn Deposition of William Sanders, representative of Defendant (Dkt. 49-4);

5. Sworn Deposition of Laura Keith, former attorney of D-F Funds (Dkt. 49-5);

6. Certified copy of original Right of Way Easement from 1948 (Dkt. 49-6);

7. Certified copy of the Amendment (Dkt. 49-7);

8. Certified copy of the 1998 Special Warranty Deed by which D-F Funds acquired the Property (Dkt. 49-8);

9. Business Records Affidavit and accompanying documents from Geary Porter, and Donovan, P.C., attorneys for D-F Funds when they owned the Property (Dkt. 49-9);

10. Certified copy of the 2007 Special Warranty Deed by which Plaintiffs acquired the Property ("2007 Deed") (Dkt. 49-10);

11. 2007 surveys of the Property conducted by Sean Shropshire (Dkt. 49-11);

12. Owner Policy of Title Insurance, purchased by Plaintiffs in connection with their acquisition of the Property in 2007 ("Title Insurance Policy") (Dkt. 49-12); and

13. Contract for Sale and Purchase of Unimproved Real Property, by which Plaintiffs' agreed to purchase the Property from their predecessors in title in 2007 (Dkt. 49-13).

Plaintiffs have offered the following summary judgment evidence in opposition to Defendant's motion:

1. Affidavit of Stephen Williamson (Dkt. 54-1);

2. 2007 Deed (Dkt. 54-2);

3. Certified copy of original Right of Way Easement from 1948 (Dkt. 54-3);

4. Certified copy of the Amendment (Dkt. 54-4);

5. 2007 survey Plaintiffs received as to the Property (Dkt. 54-5);

6. Copy of the Phase I Environmental Site Assessment of Alpha Testing that Plaintiffs received in connection of the purchase of the Property in 2007 (the "Environmental Survey") (Dkts. 54-6, 54-7, 54-8, 54-9, 54-10, 54-11, 54-12, 54-13, 54-14);

7. True and correct copy of the email between Stephen Williamson and purchasers of the Property (Dkt. 54-15);

8. True and correct copy of Plaintiffs' demand for Defendant to remove the Pipeline (Dkt. 54-16);

9. True and correct photograph of the northeast corner of the Property, looking south in October 2007 (Dkt. 54-17 at 1);

10. True and correct photograph of the eastern edge of the Property, looking northwest in October 2007 (Dkt. 54-17 at 2);

11. True and correct photograph of the northeast corner of the Property, looking north, across the road from the Property, in October 2013 (Dkt. 54-17 at 3);

12. True and correct photograph taken by Stephen Williamson of the northeast corner of the Property looking north in 2016 (Dkt. 54-17 at 4);

13. Affidavit of Phillip Conley (Dkt. 54-18);

14. True and correct copy of deposition of William James Sanders (Dkt. 54-19);

15. True and correct copy of deposition of William A. Anderson (Dkt. 54-20);

16. True and correct copy of deposition of Sean Shropshire (Dkt. 54-21);

17. True and correct copy of deposition of Stephen R. Williamson (Dkt. 54-22); and

18. True and correct copy of deposition of Laura Keith (Dkt. 54-23).

Defendant has offered the following summary judgment evidence in opposition of Plaintiffs' response:

1. True and correct copy of Plaintiffs' Responses to Defendant's First Requests for Admissions to Plaintiffs (Dkt. 59-1).

## IV. OBJECTION TO SUMMARY JUDGMENT EVIDENCE

Defendant objects to Plaintiffs' images replicated through Google Street View and Stephen Williamson's ("Mr. Williamson's") affidavit testimony regarding the depiction of the Property in October 2007, and October 2013. *See* Dkt. 59 at 9. Defendant argues the images are not properly authenticated and Mr. Williamson lacks foundation and competence to testify from such materials. *See id.* (citing FED. R. EVID. 901, 701, 702).

Rule 901 does not require absolute certainty in authentication, but rather evidence sufficient to support a finding that the matter in question is what its proponent claims. *See United States v. Mojica*, 746 F.2d 242, 245 (5th Cir. 1984) (citing *Mauldin v. Upjohn Co.*, 697 F.2d 644, 648 (5th Cir. 1983), *cert. denied*, 464 U.S. 848 (1984)). Mr. Williamson's affidavit offers the photographs from Google Street View as a depiction of the Property in 2007 and 2013. *See* Dkt. 54-17. Mr. Williamson's affidavit provides that the photographs are true and accurate depictions of the scene at the time of their taking, and that he could testify to this matter because he drove around the Property at the time the photographs were taken. *See* Dkt. 54-1 at 3-4. Because Mr. Williamson is qualified to testify as to the photography as a lay witness, the Court finds Defendant's objection is **OVERRULED**.

6

## V. ANALYSIS

Defendant argues summary judgment should be granted for two (2) reasons. First, Defendant contends the trespass claim accrued on February 5, 2001, the date D-F Funds allegedly agreed with Citgo to relocate the Easement of the Pipeline. *See* Dkt. 49 at 2. If this is true, Defendant additionally argues that any trespass claim would have belonged to D-F Funds and D-F Funds never expressly assigned a claim to Plaintiffs; thus, Plaintiffs do not have standing to bring this suit. *See id.* Second, Defendant contends, independently and alternatively, that Plaintiffs' claim would have accrued when Plaintiffs acquired the Property on August 23, 2007, because that is when Plaintiffs knew or should have known of facts that would have led a reasonable purchaser to discover the alleged trespass. *See id.*

### A. STATUTE OF LIMITATIONS STANDARD

For claims under Texas law, a claim accrues when a wrongful act causes some legal injury, even if the fact of the injury is not discovered until later, and even if all resulting damages have not yet occurred. *See Estate of Garrett v. Cherokee Water Co.*, 109 F. App'x 674, 675 (5th Cir. 2004) (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Where injury to land results, the right of action for all damages resulting from the injury accrues to the owner of the land at the time the injury commences to affect the land. *See Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 767 (Tex. App.—El Paso 2010, no pet.); *see also Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 424 (Tex. 2010) (right to sue for injury to real property belongs to the person who owns the property at the time of the injury).

Plaintiffs' trespass claim is one for permanent injury to real property. *See* Dkt. 38 at 2, 5. In Texas, a person must bring suit for trespass for injury to the estate or to the property of

another no later than two (2) years after the day the cause of action accrues. *See* TEX. CIV. PRAC & REM. CODE § 16.003(a); *Cherokee Water Co.*, 109 F. App'x at 675. Limitations may be tolled if the discovery rule applies. *See Askanase v. Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997). The discovery rule, which applies to both the act and the injury, requires that a claim be inherently undiscoverable and objectively verifiable. *See id.* (citing *S.V.*, 933 S.W.2d at 6).

### B. FACT ISSUE AS TO WHETHER CLAIMS ACCRUED ON FEBRUARY 5, 2001

Plaintiffs allege in their Amended Complaint that Citgo, the former owner of the Pipeline, and D-F Funds, the former owner of the Property, agreed to relocate or move the Easement off the Property to an adjacent tract of land. *See* Dkt. 26 at 2. Assuming this interpretation of the Amendment is true, if Citgo failed to relocate or move the Easement off the Property, then the trespass would have first become unauthorized the moment the Amendment was executed. *See Boerschig*, 322 S.W.3d at 767 (the right of action for all the damages resulting from an injury to land accrues to the owner of the land at the time the thing that causes the injury commences to affect the land) (citing *Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562 (Tex. 1936)). Thus, it logically follows that the statute of limitations began to run the date the injury affected the land, February 5, 2001, and would be barred two (2) years later, unless the discovery rule applies. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 279 (Tex. 2004).

If Plaintiffs' interpretation of the Amendment is true, Defendant argues that D-F Funds had knowledge that Citgo maintained the Pipeline on the Property and that Citgo was no longer authorized to do so. However, the Court fails to find any evidence in the record that conclusively establishes this assertion. First, Defendant states that because D-F Funds was a party to the Amendment, D-F Funds knew the exact moment that Citgo's maintenance of the Pipeline on the Property became unauthorized. *See* Dkt. 49 at 18. However, this assertion does not conclusively

establish that D-F Funds was aware that Citgo continued maintaining the Pipeline on the Property; the Amendment only shows that D-F Funds allegedly had an agreement that Citgo would not maintain the Pipeline on the Property. Second, Defendant argues that D-F Funds' lawyers were aware of the Pipeline's existence, and Defendant points to deposition testimony of D-F Funds' lawyer as support. *See* Dkt. 49-5 at 4. The deposition testimony provides:

> Q. Okay. So let me rephrase. So in the course of your representation of the D-F Funds to – to locate the blanket easement, you became aware of the pipeline in the easement, correct?
>
> A. Yes.

*See id.* The Court fails to understand how this shows D-F Funds' lawyers knew that Citgo continued to maintain the Pipeline on the Property after the date of the Amendment, and Defendant failed to provide an explanation at the hearing for summary judgment. Finally, Defendant argues that in a letter dated November 12, 1998, D-F Funds' lawyers acknowledged that the "Citgo line" had been installed pursuant to the same pipeline easements listed as exceptions to the revised commitment for title insurance. *See* Dkt. 49-9 at 123. But this letter was dated more than two (2) years before the date of the Amendment. Again, the Court is unaware how this letter demonstrates that D-F Funds was aware that Citgo continued to maintain the Pipeline on the Property when it was allegedly unauthorized to do so by the Amendment. Thus, Defendant has failed to conclusively establish that D-F Funds was aware of the Pipeline's maintenance after the date of the Amendment. Because there is a fact issue as to D-F Funds' knowledge and whether the discovery rule should apply as to D-F Funds, the Court cannot decide the statute of limitations issue as a matter of law without further evidence.

Defendant argues *RayMax Mgmt., L.P. v. Am. Tower Corp.* supports its position. *See* 2016 Tex. App. LEXIS 8748, at *16 (Tex. App.—Fort Worth, Aug. 11, 2016, pet. denied). In

*RayMax*, the plaintiff filed a suit for trespass in 2013, based on the defendant's building of telecommunications equipment on concrete pads on the plaintiff's property in 2006. *See id.* at *4. The court held that the statute of limitations barred the plaintiff's claim because the defendant installed its equipment in the disputed area in 2006. *See id.* However, this case is inapplicable because in this case, the alleged trespass occurred before Plaintiffs purchased the Property. Further, unlike the telecommunications equipment on the concrete pads of the plaintiff's property in *RayMax*, the Pipeline is not a visible, aboveground condition.

Additionally, Defendant argues Plaintiffs lack standing to bring the trespass claim. Where injury to land results, the right of action for all the damages resulting from the injury commences to affect the land. *See Boerschig*, 322 S.W.3d 767. A subsequent landowner may assert a cause of action for pre-existing injuries only if there is an express assignment of the cause of action. *See Exxon*, 331 S.W.3d 424; *Ranchero Esperanza, Ltd. v. Marathon Oil Co.*, 488 S.W.3d 354, 359 (Tex. App.—El Paso 2015, no pet.). Accordingly, a mere subsequent purchaser of property cannot recover for an injury committed before its purchase. *See Exxon*, 331 S.W.3d 424. Although a subsequent landowner may assert a cause of action for a pre-existing injury only if there is an express assignment, the Court is unaware how D-F Funds could expressly assign the injury of trespass if D-F Funds was unaware of the trespass. As previously stated, there is a fact issue as to D-F Funds' knowledge. Thus, the Court cannot decide the standing issue as a matter of law without further evidence.

### C. FACT ISSUE AS TO WHETHER CLAIMS ACCRUED ON AUGUST 23, 2007

Defendant argues Plaintiffs had knowledge of facts that would have caused a reasonably diligent purchaser of real property to discover the Pipeline on the Property and the resulting

claim for trespass. *See* Dkt. 49 at 21. Plaintiffs argue they were reasonably diligent in their investigation and could not have discovered the Pipeline before 2014. *See* Dkt. 54 at 23.

The discovery rule applies when the nature of the injury is inherently undiscoverable and the evidence of the injury is objectively verifiable. *See TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 359 (5th Cir. 2008). The application of the "inherently undiscoverable" standard recognizes that the discovery rule applies "only in circumstances where 'it is difficult for the injured party to learn of the negligent act or omission.'" *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). Discovery of a particular injury is dependent not solely on the nature of the injury, but on the circumstances in which it occurred and plaintiff's diligence. *See S.V.*, 933 S.W.2d at 8; *USPPS, Ltd. v. Avery Dennison Corp.*, 326 F. App'x 842, 847 (5th Cir. 2009). Because there is no dispute that Defendant maintains the Pipeline on the Property, the only issue before the Court is whether the Pipeline was inherently undiscoverable.

Purchasers are charged with notice of the terms of the deed, which forms an essential link in their chain of ownership. *See Cooksey v. Sinder*, 682 S.W.2d 252, 253 (Tex. 1984). Under Texas law, constructive notice is notice given by properly recorded instruments and charged to a person as a matter of law, regardless of the person's actual knowledge. *See In re Hamilton*, 125 F.3d 292, 299 (5th Cir. 1997). Thus, a party is on notice of the deed records contained in the public record for the purposes of limitations. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998).

Plaintiffs' corporate representative, Mr. Williamson, testified that prior to acquiring the Property, he reviewed the survey of the Property. *See* Dkt. 49-1 at 7. Mr. Williamson admitted that the survey indicated there were gas pipeline markers on the Property. *See id.* at 8. Defendant argues that this fact alone should have led Plaintiffs to discover the Pipeline on the Property. *See*

11

Dkt. 49 at 21. In support of its argument, Defendant relies on *Jones v. Texaco, Inc.*, wherein the court held that when the information concerning the injury is contained in public records, the purchaser of the land has constructive notice of all information. *See* 945 F. Supp. 1037, 1043 (S.D. Tex. 1996). Defendant argues that the Pipeline was openly located on the Property, via pipeline markers. *See* Dkt. 49 at 23. Plaintiffs contend, however, that it is plausible for old markers to remain on real property after the removal or abandonment of a pipeline. Defendant has offered no evidence that the presence of the old markers conclusively establishes that a functional pipeline was presently buried on the Property. Defendant merely argues that the old markers should have caused a reasonably diligent purchaser to inquire further as to the existence of a pipeline. The Court finds that there is a fact issue best decided by a jury.

Additionally, Defendant argues that Plaintiffs were on notice of the Pipeline because of the documents in the chain of title. Plaintiffs' 2007 Deed and Title Insurance Policy state that the Easement affects the Property, as stated in the Amendment. *See* Dkts. 49-10 at 7; 49-14 at 8. To the contrary, the survey Plaintiffs received indicated that the Easement in question "[d]oes not affect subject tract." *See* Dkt. 54-5. Regardless, Defendant asserts that this conflict would have caused a reasonably diligent purchaser to inquire about the existence of the Pipeline. *See* Dkt. 59 at 5 (citing *Bergeron v. Select Comfort Corp.*, 2016 WL 155088, at *6-7 (W.D. Tex. Jan. 11, 2016)). Further, Defendant cites to numerous cases where courts declined to apply the discovery rule because the plaintiffs were not reasonably diligent in discovering the alleged trespasses. *See HECI Exploration*, 982 S.W.2d at 886-88 (visible oil wells should have led the royalty owners to discover the injury); *Brown v. Caldwell & Family Custom Homes, Inc.*, 2012 Tex. App. LEXIS 8370, at *12-13 (Tex. App.—Fort Worth Oct. 4, 2012, no pet.) (an inspection report disclosed the negative drain angle advising the plaintiffs to determine whether the condition caused the

damage); *Zimmerhanzel v. Green*, S.W.3d 721, 726 (Tex. App.—El Paso, pet. denied) (statute of limitations for violations of the Deceptive Trade Practices Act began to accrue on the date of closing because the grantor verbally disclosed to the purchaser that there was a condition on the land); *DBMS Invs., L.P. v. ExxonMobil Corp.*, 2009 Tex. App. LEXIS 4140, at *32-33 (Tex. App.—Corpus Christi June 11, 2009, pet. denied) (summary judgment granted because appraisal report and public records disclosed gas spills, the alleged trespass; appraisal report recommended an environmental impact study on the property); *Hunt Oil Co. v. Live Oak Energy, Inc.* 313 S.W.3d 384, 392 (Tex. App.—Dallas 2009, pet. denied) (a reasonable purchaser of mineral rights would have investigated whether visible wells on property precluded future recovery of oil); *Alamo Fireworks, Inc. v. Truckload Fireworks, Inc.*, 2002 WL 313191, at *1 (Tex. App—El Paso Feb. 28, 2002, no pet.) (the plaintiff had a duty of inquiry in addition to actual notice because the condition could have been uncovered through reasonable diligence).

The cases to which Defendant cites are inapplicable in this case because either there were numerous documents or reports indicating the alleged trespasses which the plaintiffs ignored, or the condition was open, visible, and aboveground. Here, there was a survey indicating that the Easement no longer affected the Property, and the Pipeline itself was not physically visible aboveground on the Property. The Court finds that Plaintiffs were entitled to rely on the Amendment because it was in the chain of title. Further, even though there may have been a conflict between the 2007 Deed, Title Insurance Policy, and the survey Plaintiffs received, the Court finds that Plaintiffs conducted at least some inquiry—specifically, they obtained the Environmental Survey—to discover whether a pipeline existed on the Property, rather than ignoring the conflict presented in the documents. The Environmental Survey of the Property, conducted on July 31, 2007, indicated there were no petroleum pipelines or markers on the

Property. *See* Dkts. 54-7 at 6; 54-6 at 14, 17. Thus, Plaintiffs seemingly did not fail to ask about the Pipeline, as Defendant contends, because they conducted the Environmental Survey. *See* Dkt. 59 at 10 (citing *Hunt Oil Co.*, 313 S.W.3d at 392 ("Failing to even ask," according to the Texas Supreme Court, "is not due diligence.")). Regardless, Defendant argues the lone statement in the Environmental Survey does not permit Plaintiffs to ignore all other evidence to the contrary. *See* Dkt. 59 at 7-8 (citing *Collective Asset Partners v. McDade*, 400 S.W.3d 213, 217-18 (Tex. App.—Dallas 2013, no pet.)).

The Court finds Defendant's argument is better suited for a jury, and the Court cannot decide as a matter of law whether Plaintiffs were reasonably diligent in their investigation. *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998) (citing *Strickland v. Johns-Manville Int'l Corp.*, 461 F. Supp. 215, 218 (S.D. Tex. 1978); *Hassell v. Missouri Pac. R.R. Co.*, 880 S.W.2d 39, 44 (Tex. App.—Tyler 1994, writ denied)). Defendant has not provided any evidence to conclusively establish that Plaintiffs could not rely on the Amendment and Environmental Report, and Defendant has not conclusively established that the Amendment did not move the Pipeline off the Property; thus, the Court cannot decide this issue as a matter of law.

Plaintiffs argue that they purchased the Property as real estate investors, not land developers; thus, Plaintiffs argue the Court should apply a more lenient standard on whether they conducted their investigation as reasonably diligent purchasers. *See* Dkt. 54 at 27-29. Defendant argues there is no case law supporting this notion. In *Bruning v. Hollowell*, the plaintiff argued that "he is a layman with little experience on the standards used by appraisers to establish the value of residential real estate;" thus, the plaintiff would not be able to discover the inaccuracies and misrepresentations in an appraisal within two (2) years. *See* 2015 WL 1291378, at *4 (Tex. App.—Dallas Mar. 23, 2015, pet. denied). However, distinguishable in this case is that there

were conflicts between the 2007 Deed, the Title Insurance Policy, and the survey of the Property. Plaintiffs conducted the Environmental Survey indicating the Pipeline did not exist on the Property. Here, the issue of whether Plaintiffs were reasonably diligent purchasers is a fact issue for a jury to decide. The Court will not decide as a matter of law whether Plaintiffs were required to inquire further even though they were real estate investors rather than developers.

Finally, Defendant argues Plaintiffs could have discovered the Pipeline in 2007 by simply calling Defendant because the pipeline markers provided a telephone number for anyone to call. *See* Dkt. 59 at 9. However, Defendant did not purchase the Pipeline from Citgo until after Plaintiffs purchased the Property; thus, there were no pipeline markers specifically providing Defendant's phone number at that time. *See* Dkt. 26 at 3. Thus, even if the pipeline markers on the survey required Plaintiffs to investigate further, the Court finds there is a fact issue as to whether Plaintiffs were reasonably diligent in their investigation.

## VI. CONCLUSION

For the foregoing reasons, the Court finds Defendant's motion (Dkt. 49) is **DENIED**.

**It is SO ORDERED.**

**SIGNED this 11th day of May, 2017.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE